UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CHARLES EDMUND STAGGS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-09-48 |
| | § | |
| KENNETH NEGBENEBOR, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER OF DISMISSAL

Charles Edmund Staggs (TDCJ # 625560), an inmate in custody of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), at the Ramsey Unit, has filed a complaint under 42 U.S.C. § 1983, alleging a failure to protect by defendants Negbenebor, Oguin, Guidry, Geist, and Leflore. The defendants have moved for summary judgment. (Doc. #30). The plaintiff has filed a response (Doc. #33). The defendants have filed a response to the plaintiff's response (Doc. #34) and the plaintiff has filed a surreply (Doc. #35). Based on the pleadings, the motions, the summary judgment record and the applicable law, this court will grant the defendants' motion for summary judgment. The reasons for this ruling are stated below.

**I.    Background**

    **A.    Plaintiff's Allegations**

Staggs alleges that the defendants were deliberately indifferent to his safety by failing to protect him from assault by another inmate. Staggs states that on April 4, 2007, he was attacked from behind by inmate Reed without warning or provocation while standing in the dinner line. Staggs was struck by Reed in the back of the head, on the right side of his face and at the corner of his right eye. The blow also broke his eyeglasses. Immediately after the attack, Staggs was

1

escorted to the infirmary and treated. (Doc. #2 at 6). Staggs claims that the defendants knew or should have known that Reed was a violent offender because earlier in the day, Reed had been involved in a verbal altercation with another offender. Reed also struck and spit on his cell mate on March 1, 2007 and, on an unspecified date prior to March 1, 2007, attacked another inmate. *Id.* at 7, 8. Staggs also argues that prison officials should have known of Reed's propensity for violence because Reed was convicted of assaulting an elderly invalid. Staggs states that the defendants were aware of inmate Reed's aggressive history, yet knowingly released him to general population after being placed in pre-hearing detention. Staggs asserts that "Reed's repeated and continued pattern of assaultive behavior was sufficient to be "so obvious" as to give the defendants knowledge that a substantial risk of harm existed." (Doc. #2, p. 13). The defendants' failure to properly assign Reed to the appropriate security or custody level constituted deliberate indifference to Staggs' safety and caused him to suffer "temporary and permanent injury requiring medical treatment; physical pain and suffering; mental anguish; fright and shock; embarrassment and humiliation and mortification; and psychological injury." Staggs seeks compensatory damages.

**B.    The Summary Judgment Evidence**

In support of their motion for summary judgment (Doc. #30), the defendants have filed the affidavit of Janice Oguin, (Doc. #30, Exh. A); and the affidavit of Douglas Geist (Doc. #31).

In her affidavit, Janice Oguin, Chief of Unit Classification at the Ramsey Unit, explains that "the unit classification department determines where to house a particular offender on a unit based upon that offender's custody classification. An offender's custody classification is based, in part, upon that offender's behavior and disciplinary history. Inmates with minimal disciplinary problems generally receive a custody classification that allows them to be housed in the general

population." (Exh. A at 1, 2). The custody classification of every inmate is periodically reviewed by the unit classification department to ensure that every inmate is properly housed. Only the three person unit classification committee makes classification determinations. No single person has the authority to assign an offender to a particular custody classification. In response to Staggs' analogy that a person (Reed) who was convicted of assaulting another person in the free world should be expected to commit assault again in prison and should therefore be housed out of general population, Oguin states that "except in rare circumstances, the nature of the free world offense does not determine the offender's TDCJ custody classification." That is why, she explains, "an offender convicted of murder, like offender Staggs, may be housed in general population with offenders only convicted of assault, like offender Reed."

With respect to Reed's recorded behavior while in prison, Oguin states that prior to the April 4, 2007, assault against Staggs, Reed had been in two fights with other offenders on the unit. The altercations were classified as fights rather than assaults because both parties were equal participants. Regarding the April 4, 2007, incident with Staggs, Oguin states that Staggs never notified her or any person in her office that he was in any danger with Reed; nor did offender Reed ever notify her or any person in her office that he had a problem with offender Staggs. After the assault, Staggs stated that he "did not feel threatened by offender Reed in the future, and refused to file a life in danger claim." And, there were no further altercations or incidents reported between offenders Staggs and Reed. Oguin states that at no time did she have knowledge or reason to suspect that Reed might assault Staggs. Had she known, she would have initiated a life endangerment investigation and Staggs would have been placed in transit status for his protection, pending the outcome of the investigation. Oguin concludes her affidavit by

stating: "Given offender Reed's disciplinary and classification history, offender Reed's assignment to general population was appropriate and consistent with TDCJ policies."

Douglas Geist states in his affidavit that he has been a correctional officer at TDCJ since June 1994, and was a Lieutenant at the Ramsey Unit "at the time of the fight" between Staggs and Reed. He further states that he did not tell Staggs that Reed "tried to box me earlier," as alleged by Staggs, nor did he have any interactions with Reed in which he attempted to engage in a physical altercation with him. Giest states that had Reed or any other offender attempted to physically assault him, he would have placed the offender in pre-hearing detention and issued a disciplinary case. Geist asserts that he takes threats to his personal safety very seriously and that his personal safety would be in jeopardy with every offender on the unit if he allowed an offender to physically assault him, as suggested by Staggs. Geist states that he had no information to suggest that Reed was a threat to any other inmate; nor was he notified by Staggs that there was a chance that Reed might assault him. Further, no other inmates notified him that they thought that Reed might be a threat to anyone, or that Reed was any more likely to commence a fight than any other inmate in the unit that day. Geist states that if he had known that Reed presented a threat to the safety of anyone, he would have segregated him from the general population and informed prison administration about the threat. Geist concludes his affidavit by stating that his "actions were based upon his training and experience as a TDCJ employee, and were in accordance with TDCJ policies and procedures."

## II.     The Legal Standard on Summary Judgment

The defendants' motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 mandates the entry of summary judgment, after adequate time

for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of showing that summary judgment is appropriate. *See Martco Ltd. Partnership v. Wellons*, *Inc.,* 588 F.3d 864, 871 (5th Cir. 2009) (citing *Celotex*, 477 U.S. at 323). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.,* 477 U.S. at 322-23.

If the moving party meets its initial burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'" *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted). The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 478 U.S. 574, 587 (1986). "A fact is material only if its resolution would affect the outcome of the action, ... and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,* 478 U.S. at 587-88. However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004). The nonmovant's

burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 545 n. 13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l.* 343 F.3d 401, 405 (5th Cir. 2003).

### III.     The Claims Against the Defendants in Their Individual Capacities

The defendants assert that they are entitled to qualified immunity as a matter of law because Staggs failed to allege a constitutional violation.

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts typically conduct the two-prong analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson*, 525 U.S.223, 129 S.Ct. 808, 817 (2009). The first prong of the *Saucier* analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, 550 U.S. 372 (2007) (citing *Saucier*, 533 U.S. at 201). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id*. (quoting *Saucier*, 533 U.S. at 201). If there is evidence to support the violation of a constitutional right, the second prong of the *Saucier* analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur.,*

*L.L.C. v. Tunica County, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

The Supreme Court has recently clarified that the two-prong protocol established in *Saucier*, while often appropriate, is no longer mandatory for resolving all qualified immunity claims. *Pearson*, 129 S.Ct. at 818. Reviewing courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. Thus, the "rigid *Saucier* procedure" need not be followed in any particular sequence. *Id*. In this case, the Court finds it appropriate to determine initially whether a constitutional violation occurred under the traditional two-step procedure established in *Saucier.*

In the case of a qualified immunity defense, the usual summary judgment burden of proof is altered. *See Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Mitchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Brazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Mitchalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof, but must offer more than "mere allegations.") (quotation omitted).

### A.     The Failure to Protect Claim

The Eighth Amendment proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not every injury "suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety. *Id*. at 834. In order for prison officials to be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement, including protecting him from harm by another inmate, a plaintiff must prove that the official knew of and disregarded an excessive risk to inmate health or safety; was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the inference; and failed to take reasonable remedial action. *Id*. at 842-45.

Liability for an Eighth Amendment deprivation requires the same delinquency in denial of protection against harm from other inmates as it does for denial of medical care, *Johnson v. Lucas,* 786 F.2d 1254, 1259 (5th Cir. 1986); thus, there must be an allegation of facts which will support deliberate indifference on the part of officials. *Wilson v. Seiter*, 510 U.S. 294 (1991). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment." *Farmer,* 511 U.S. at 826. Furthermore, the mere negligent failure to protect a prisoner from assault does not constitute a constitutional violation unless it becomes pervasive. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Oliver v. Colins*, 914 F.2d 56, 60 (5th Cir. 1990).

The record and facts do not support a claim that any prison official was deliberately indifferent to Staggs' safety. As noted by defendant Oguin, inmate Reed was appropriately

8

assigned to general population by a three person committee. There is no evidence to support a theory that any defendant knew or had reason to know that inmate Reed was going to attack Staggs or any other inmate, and Staggs has failed to produce any. There is no record that Staggs ever notified any defendant that he was in danger of being attacked by inmate Reed. Staggs' claim that the defendants should have known that inmates were at risk of being assaulted by Reed because he was convicted of an assault crime is ludicrous. Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial, criminal and often violent behavior." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). They house persons who have necessarily shown a lapse in ability to control and conform their behavior by the normal impulses of self-restraint, and who have not shown an ability to conduct themselves in a way that reflects either a respect for law or an appreciation of the rights of others. *Id*. at 526. There are simply no facts that any defendant was deliberately indifferent to Staggs' safety or ignored any fact shown to him indicating he was in substantial risk of serious harm.

With respect to defendants not discussed in this memorandum opinion, Staggs has wholly failed to show that any of them had any personal involvement in the alleged constitutional violation. Personal involvement is an essential element of a civil rights cause of action. *Monell v. New York Department of Social Services*, 436 U.S. 658, 693 (1978); *Rizzo v. Goode*, 423 U.S. 362, 372-72 (1976). Failure to indicate an individual defendant's personal involvement in the alleged unconstitutional action is grounds for dismissing the complaint. *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986). Staggs has offered nothing more than conclusory allegations regarding the personal involvement of defendants Negbenebor, Guidry, Leflore or Oguin in an alleged constitutional violation. The defendants are entitled to qualified immunity as a matter of law.

## IV.     CONCLUSION

Staggs has failed to rebut the defendants' affirmative defense of qualified immunity by showing the existence of a disputed fact issue that the defendants were deliberately indifferent to his safety. *See Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997). The defendants' motion for summary judgment is **GRANTED** and this action is **DISMISSED** with prejudice as frivolous and for failure to state a claim for which relief can be granted.

All pending motions are **DENIED** as moot.

**The Clerk shall provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, fax: 936-437-4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas this 9th day of March, 2011.

_____
Kenneth M. Hoyt
United States District Judge